Thank you, your honor. Good afternoon. May it please the court. I'm Elizabeth Krushak representing Paul Burdette. I will watch the clock and try to reserve about three minutes for my rebuttal. Okay. This is a case in which there were multiple trial errors that both individually and combined require a remand for a new trial. And at a minimum, there should be a remand for resentencing to address the unreasonable supervised release, the length of the supervised release term, and to conform the supervised release condition to the oral pronouncement. With the court's permission, because the government and I recently exchanged 28J letters on the issue of the prior consistent statements, I will start there. There are essentially three areas where the government and I have a dispute with regard to the prior consistent statements. One is the existence of the motive to fabricate. The second has to do with what role, if any, Subsection 2 of Rule 801 plays. And then the third would be the harmfulness of the introduction of the evidence. With respect to the motive to fabricate, the government's position is that there was no motive to fabricate. That is simply belied by the record in this case. The fact of the matter is that Ms. Davis, the alleged victim here, did in fact fabricate. She initially said when she first contacted the police that nothing had happened. And then she proceeded to flip-flop her story. And when she was asked about it, she conceded that it would be embarrassing for cousins to have sex. And that's why, from our position, that's why she fabricated the story, to avoid embarrassment. So from our position, there is a clear motive to fabricate. Moreover, that motive to fabricate arose well before she made the statements that were at issue. She made those statements toward the end of the investigation of the case, after she had first told the responding officer that there was no sexual assault, nothing had happened. She then proceeded to flip-flop. She told an EMT that nothing had happened. Then she was approached by Captain Winton from the fire department to discuss it. She then said she was penetrated. She then provided a story in an exhibit that was presented to the court, in which she described the basic nature of what normally would have been the assault, but didn't mention that she was sexually assaulted. And she continued to flip. And there were multiple flips after that. And then she told Officer Marchessault that she had been sexually assaulted, and she described it in a way that was consistent with her trial testimony. So based on the record, there's really no question that she had a motive to fabricate, and that arose well before she made the statements to Officer Marchessault, to which he testified. The second issue is more of a legal one, which is what impact, if any, Subsection 2 of the evidentiary rule has in this case. I provided the court with the 28J letter that cites Portillo, which is a Fifth Circuit case, that I believe addresses this to the extent that the court believes that there were inconsistencies outside of the motive to fabricate that were even identified by the government. But it's my position that everything that happened in terms of attacking Ms. Davis was this motive to fabricate. The entire defense was that Ms. Davis lied about the rape because she was embarrassed that she had sex with her cousin, and that she had been drinking with her cousin and had been drinking a specific kind of liquor, fireball whiskey, that she acknowledged in cross-examination made her lose control. So the entire thrust of the defense was that there was this motive to fabricate. The alleged inconsistencies that the government identifies are not really inconsistencies. They say that we said that Ms. Davis provided a different story in an interview. It's not that she provided a different story or an inconsistent account of the assault. She didn't identify that the assault happened, and that goes exactly to the motive. The same thing about reasons that she got out of the car, whether or not Mr. Burdett held her down. All of those questions were about clarifying what her actual testimony was. They weren't even pointing out inconsistencies. They were trying to clarify the record and what her testimony actually was. Subsection 2 of Rule 801 has nothing to do with the motive to fabricate. It's when credibility has been attacked on another ground, and it's our position that there was no other ground on which Ms. Davis was attacked. She was attacked solely for the purpose of fabrication. And the government is incorrect that its cases support its position. In those cases, the statements that came in under Subsection 2 were exactly the kind of statements that should come in under Subsection 2. In Purcell, the witness was confronted with certain kinds of statements that made it look like aspects of her statement that made it look like she had left out things or withheld something from the police, and then the government came back and brought in her entire statement to show that those perceived inconsistencies weren't inconsistencies at all, and that she had actually provided the full information to the police. The same thing with the JAS case from the Sixth Circuit. There, the witness was confronted on cross with information saying, oh, you've made new statements, you've made different statements, you've never said this before, and the government brought in prior consistent statements to show that in context, all of those statements have been made. The situation here is completely different. And finally, as to the harm, you have to understand the context of this case really is a he said, she said case. The jury heard a lot of evidence that the victim had flip-flopped in her in her recounting of whether or not a sexual assault had happened. And then for the government to bring in a law enforcement witness at the end, after she's testified to clean up everything and to provide a very concise, very professional account of what she said is really devastating to the defense when the entire defense was that Ms. Davis had lied. But the government had also presented, I think, without objection, testimony from the paramedic and from the ER nurse and from, I believe it was the nurse who was responsible for the rape kit, all of which were consistent with the victim's account. And so I guess my question is, what did the officer's testimony about what she had said really add to what had already come in from those other three witnesses about what she said? Well, let me clarify what we had was a timeline of flip-flops. And so those other statements were important in terms of showing how she flip-flopped. So it wasn't like she said nothing happened, then said it did, and then stuck with it. There was actually flip-flopping within that. But so what you have are a series of statements of sort of weighing each side. Right. So you've got her saying nothing happened, her saying something happened. When the officer comes in and he says exactly what she said, exactly what she testified to in the most concise way possible from the mouth of a law enforcement officer, it's one more weight on the government side. And there was no – and also coming from an officer that's incredibly powerful for the government to have that. So it outweighs and it makes it look and gives her more credibility than she was due, if that answers your question. Well, I guess maybe you could elaborate on what the evidence of flip-flopping was. Because the statements I was referring to I thought were all consistent with each other and with her trial testimony. So I can walk you through the sequence of statements that came in if that would be helpful. Okay. And I'll try to give you the ER numbers to the extent that I can. She first said at ER 374 to Officer Thompson that nothing happened. Then at ER 827 to the EMT, Brandon Labonte, she said she was out with a friend and was held against her will. There was no mention of sexual assault there. ER 432, she spoke with Captain Winton. And what she said – and he took her aside, if you recall, because he was afraid that there might be multiple men present and she would be ashamed. And what she said was she was penetrated. And he understood that to mean that she was sexually assaulted. But what she said was she was penetrated. Then she was sent to the hospital. Because if I recall, he said that she gave that answer in response to the question, were you sexually assaulted, right? He said that he had asked her that. Yeah, and I'm trying to mess with the record. Correct. He was asking, was there a sexual assault? And what she said was, I was penetrated. And he understood that to be a yes answer. Okay. So then at ER 828, after she speaks to Winton, she speaks to Labonte again, who's the EMT who's driving her to the hospital, and she says that she wasn't assaulted, that she was just held by a family friend. Then at 457, she speaks to a nurse at the first hospital, and she said that she was sexually assaulted. Then she spoke at ER 376 with Officer Thompson. She told him to leave it alone. 378 is the introduction of Exhibit 16, which was submitted to the court. She describes the incident. During that description, she says, he pulled my shorts off. She never says that she was sexually assaulted. She just describes this interaction in which they were together in the woods, and she ran away. And then at ER 578 and, I think, 592, there's the same nurse where she describes a sexual assault. That's an interesting statement in that she, in that statement, says she references the drinking, and she says that Paul kept drinking and she stopped drinking, which also implies that she had been drinking while out in the woods with him during the sexual assault, which is not what she said during her testimony. So all of that then leads up to Officer Marcheseau's testimony. So my point is, when you look at that, there's actually a lot of flip-flopping. And when the government then brings in the law enforcement officer, it's incredibly damning for the defense because that's the last word that they hear. He shores up all of these problems and all of these flip-flops for the government. I see I spent a lot of my time on that. I do want to hit the 413-403 issue. It has two subcomponents. One, that the evidence from my client's ex-wife should not have been admitted at all under Rule 403, and two, that there should have been a jury instruction. This evidence was extraordinarily prejudicial in a he-said-she-said case, and you've got my client's ex-wife saying that he raped her three times during the marriage. She testified to three separate incidents, one of which when she was pregnant and one of which when she was with their child. Even if the court disagrees and thinks that this evidence should have been admitted, it certainly should have come with a jury instruction. And keep in mind that Randy Jo Brown, the ex-wife, was the last witness in the government's case-in-chief. So what the jury was left with was testimony. They had no idea why it was coming in or what they were to do with it, and they didn't get that information either before her testimony or in the final instructions, both of which are recommended by the Ninth Circuit. And I understand- Go ahead, Judge Miller, go ahead. The question I was going to ask is just, the government asked for an instruction about this, and it was defense counsel who said they didn't want one, right? So why-maybe you could address what the standard of review here is and specifically why we shouldn't view this as invited error. Okay, so it shouldn't be invited error because there is no evidence in the record that defense counsel considered and knew that this instruction could be given and then affirmatively decided not to give it. What the record shows is that there was confusion. So what happened initially before Randy Jo Brown's testimony was that the government asked for the instruction. You're correct, the government absolutely asked for this instruction. Defense counsel then asked the court to exclude the testimony entirely. The argument there was directed at whether the testimony qualified under Rule 413 as a prior sexual assault. The district court basically said, I've already ruled on that, as did the government. And then the district court, without giving defense counsel any opportunity to address the instruction itself, because all she had said was, don't allow this testimony, it's not going to qualify as a sexual assault. The district court then cut off defense counsel and said, I'm not reading the instruction. A similar level of confusion happened when there was the discussion of the final instructions. The court said to the government, you've asked for this yesterday, I told you I wasn't giving it to you. The government then did make a record and then the district court asked for defense counsel's position. Defense counsel was clearly confused and said it's not needed because there's this 404B instruction. The government said, well, we're not proceeding under 404B. We're going under 413. And then defense counsel says, well, I mean, it's the 413 instruction. And then she gets cut off again by the judge. It's clear from that exchange that she thought there was an instruction in the packet that covered that evidence. So under that record, there's no way it's invited error. And my argument is also it's not plain error either. Because what would have been required at that point is for defense counsel to take exception to a ruling that the district court had made twice. And Rule 51A and B, neither of those provisions requires that. So that's why my argument is the issue is entirely preserved. Okay. Leslie, you've used your time. Let's hear from the government and we will give you a chance to respond. Thank you. Thank you. Good afternoon. May it please the court, Rachel Hernandez on behalf of the United States. After a night of drinking, the defendant raped his cousin in the woods and left her there. When the police were collecting evidence, he misled them, giving them a pair of shorts instead of the pants he was wearing on the night of the assault. And when DNA evidence was discovered, he changed his story about what happened that night. Given the strength of that evidence, the crux of the defense centered on the victim's credibility. The district court's evidentiary rulings here were sound, particularly given the highly deferential standard of abusive discretion that is applicable. Turning just to the 413 issue first, the evidence met the LeMay factors. The court conducted an extensive hearing, considered the statements of the ex-wife, and made proper rulings there. I will turn to the issue that counsel was last addressing, which is the jury instructions and to Judge Miller's question about why or what evidence is there that it was waived. And I will tell you that defense counsel was aware that this was an issue because this was marked as a disputed jury instruction when the joint instructions were submitted to the court 20 days before trial. So this was a known issue, that CR 71. Number two, at the instruction conference, I don't dispute what counsel said as to how the discussion occurred with regard to this instruction. But the fact that the assertion that she was not able to bring this up to the judge and clear up any confusion is not belied by the record. At the end of the instruction conference, the government brought up an issue with regard to another instruction, and the court asked the defense if they were prepared to discuss that. The defense said they needed time. The judge gave a brief recess. The parties came back, made an argument on that other instruction, and then the court said, is there anything else? Certainly in that time, if there was confusion, the defense counsel had time to address that. But as I said, there was not confusion because this was a disputed instruction. Defense counsel was aware that this was coming in under 413, and she told the court twice that it was not needed and that this was not a prior bad act. So all of those factors support waiver here. In the event that the court wants to look beyond the waiver argument, I would say plain error does apply here. And I would point to the Perez case. The error in objecting, the point is to advise the district court to kind of send up a flag saying, hey, I don't think you're getting this right. When the defense is affirmatively asking the district court to do what it in fact did, that cannot be said to preserve the error. And here, if the issue wasn't waived, it was certainly should be reviewed under plain error, and there was no plain error. The substantial rights of the defendant were unaffected because the missing instruction itself places no limits on how the jury can handle the evidence. The missing instruction says you may use this evidence, the purported missing instruction, you may use this evidence to decide whether the defendant committed the act charged in the indictment. That's a very broad use of the evidence. So what the jury was told instead was you must determine whether the defendant is guilty or not guilty of the charge in the indictment and that he's not on trial for any other conduct or offense not charged in the indictment. So the jury was actually left with a more restrictive understanding of what they could do with that evidence than they would have been if the instruction had been given. I would like to move on to the issue of the prior consistency. And I will say it's a bit of a, I think it's a bit of a moving target with regard to when the motive or the purported motive to lie arose, to falsify arose, given that she had no requirement to report a consensual, so if it was consensual sex, she had no reason to report it. And the inconsistencies that were attacked at trial were not whether she had ever said it was consensual and not consensual. In the beginning, she did not report that she had been assaulted. And then she did report it. After that, there were times where she was interviewed and did not raise it, but she never said it was consensual. That was not the issue that was raised. So it's confusing to me when the motive to fabricate actually arose. As to subsection two, that is a broad subsection, which this evidence is admissible under. And in the Second Circuit, the Sixth Circuit, the Seventh, the Tenth, have all found that similar evidence is admissible. This court, however, has not spoken on it. And so I think the easy answer is it was harmless. And let me tell you why. First of all, Officer Marshesall testified. His entire testimony, direct, cross, redirect, spans 50 pages of the transcript. The questions at issue here span one and a half of those pages, eight questions. By comparison, the victim's cross alone was 50 pages. So it was a far more, and when she was crossed, she was cross-examined on every statement she gave and every inconsistency as we've been discussing. So the testimony from Marshesall was not the focus of the case. It was not even the focus of his testimony. It was not discussed in cross-examination. In contrast, what was discussed was another recorded interview by the victim with a different police officer, which was admitted without objection by defense, and which defense played in their closing argument, played that recording of the victim. So when you compare that and you compare the victim's, the extensive nature of the victim's testimony and the cross-examination of her statements, and as the court pointed out, the nurse, the EMT, and just the overall strength of the evidence, which I mentioned earlier, it was certainly harmless. As to the sentencing of the lifetime supervised release, as the court is aware, there is great deference owed to the district court, who has the ability to observe the defendant throughout the proceedings, pre-trial, trial, sentencing. And here you have an unobjected to pre-sentence report that contains a litany of prior criminal history and bad acts towards domestic partners. And for those reasons, as the district court said, in imposing the lifetime supervised release, that was justified. So if the court has no further questions, I would ask that you affirm. Okay, hearing no further questions, thank you. And Ms. Krisha, we took you to the end, but let's give you two minutes to respond. Thank you, Your Honor. First of all, I want to qualify. The jury instruction was disputed because defense did not believe that Ms. Brown's testimony constituted prior sexual assaults within 413. That's the only reason it was disputed. There is no evidence in the record that defense counsel did not want that instruction given. The only evidence in the record is that she was confused. And the case law, Mancinas-Flores in particular, does not require, although it acknowledges that sometimes it would be nice if defense counsel spoke up when things like this happen once the court ruled, that's not what's required under the law. Second, I want to address an issue in terms of the motive to fabricate. The government mentioned, well, she never said it was consensual. Well, of course she didn't say it was consensual. The whole point is that she got discovered. She got lost in the forest. She got stuck. She called the police. She said nothing happened because our theory of the case is that she had had consensual sex with her cousin and she was embarrassed about it. And she acknowledged that. At one point in ER 570, she says I didn't want them to think I was a whore back there with him alone in the forest. What happened is she had blood on her pants. She had scrapes and she was stranded in the forest. And people were concerned that she had been sexually assaulted. And when that was offered to her, she took it. That's the theory of the case. With respect to the lifetime supervised release, all I can say about that is it's an extremely rare thing for an individual to get lifetime supervised release. And what the judge decided here makes no sense in terms of the record. My client had mental health issues. He had alcohol abuse issues. There's no question about that. I acknowledge that there was evidence in the PSR that he had a domestic abuse problem. That does not justify lifetime supervised release. Only 13% of the 1.1% of federal offenders who get lifetime supervised release are these sex offenses. And there's just simply insufficient evidence in the record that my client qualifies as one of those individuals. I see I'm out of time. So thank you very much. Okay. Thank both sides for their very helpful arguments. United States versus Burdette is now submitted for decision. And that concludes our oral argument for the day. So we're now in adjournment. Thank you to the attorneys.
judges: W. Fletcher, Miller, Hunsaker